## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WC 1ST AND TRINITY LP** | § | **Case No. 20-10885** |
| | § | |
| **WC 3RD AND CONGRESS LP** | § | **Case No. 20-10887** |
| | § | |
| **WC 1ST AND TRINITY GP LLC** | § | **Case No. 20-10886** |
| | § | |
| **WC 3RD AND CONGRESS GP LLC** | § | **Case No. 20-10888** |
| Debtors | § | |

## MOTION TO DISMISS BANKRUPTCY CASES, OR,
## IN THE ALTERNATIVE, MOTION FOR DECLARATION THAT RECEIVER MAY
## REMAIN IN CHARGE OF THE DEBTORS IN POSSESSION

TO THE HONORABLE TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE:

Gregory S. Milligan ("Milligan" or "Receiver"), the court-appointed Receiver for Debtor

WC 1st & Trinity LP ("Trinity LP") and Debtor WC 3rd & Congress LP ("Congress LP") (Trinity

LP and Congress LP, collectively the "Partnerships") files this Motion to Dismiss the bankruptcy

cases filed by Trinity LP, Congress LP, WC 1st & Trinity GP LLC ("Trinity GP"), and WC 3rd &

Congress GP LLC ("Congress GP") (Trinity GP and Congress GP collectively, the "General

Partners") (the Partnerships and General Partners collectively, "Debtors") on August 5, 2020 (the

"Bankruptcy Cases") because (1) the Partnerships' bankruptcy petitions were filed without

authority to do so, and (2) the Bankruptcy Cases were not filed in good faith.  Should the Court

decline to dismiss the Bankruptcy Cases, the Receiver respectfully requests that the Court

designate him as the person in charge of the Partnerships, as debtors in possession.[1]

---

[1]    As the state-court-appointed Receiver for the Partnerships, the Receiver moves to dismiss the bankruptcy cases of the Partnerships for lack of authority to file (see Section IV(A) below) and/or, alternatively, because they were filed in bad faith (see Section IV(B) below).  The Receiver is not in charge of the General Partners, but moves to dismiss the bankruptcy cases of the General Partners for cause because they were filed in bad faith (see Section IV(B) below). The alternative relief sought in Section IV(C) applies only to the Partnerships.

## I.  JURISDICTION

1.     This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## II.  OVERVIEW

2.     Prior to August 5, 2020, there were 16 bankruptcies filed by various World Class entities pending before this Court, all of which were purportedly filed to preserve equity in estate property under the threat of pending foreclosures.

3.     These Bankruptcy Cases are fundamentally different.  There was no immediate threat of foreclosure because the Partnerships' properties were *in custodia legis* as a result of a pending state-court receivership.  The Bankruptcy Cases were filed for no conceivable purpose other than to impede the Receiver's discovery of facts and stop the state court's award of sanctions against Debtors as a result of their continual and blatant contempt of the state court's orders. Within twenty-four hours after a ruling that the Partnerships give the Receiver unfettered access to all financial data on their accounting system and present World Class' Vice President of Accounting for deposition, the Debtors filed bankruptcy just minutes before the scheduled deposition .

4.     By this Motion, the Receiver will show that the Bankruptcy Case should be dismissed because it was filed without authority and in bad faith.  Alternatively, should this Court decide not to dismiss the Bankruptcy Case, the Receiver respectfully requests that the Court empower the Receiver to operate the Partnerships, as a debtor in possession.

5.     The Order Appointing Receiver (the "Receivership Order") appointed Milligan as receiver for the Partnerships and vested the Receiver with full and exclusive management

authority, including "the sole and exclusive right to file voluntary petitions" under the Bankruptcy Code for the Partnerships.[2]  Furthermore, the Receivership Order provided:

> If a Partnership is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.[3]

### III.    FACTUAL BACKGROUND

6.      The Partnerships are Texas limited partnerships owning valuable downtown Austin real estate.  The General Partners are Texas limited liability companies.  Natin Paul ("Nate Paul") owns (either directly or through an affiliated entity) and controls the General Partners and the majority of the partnership interests of the Partnerships through wholly owned entities under the World Class Capital umbrella (the "World Class Partners") (Nate Paul and the World Class Partners may be collectively referred to herein as "World Class").   The Roy F. & Joann Cole Mitte Foundation ("Mitte"), a Texas non-profit corporation, owns minority interests in the Partnerships.

7.      While the litigation history between Mitte, the Partnerships, the General Partners, World Class, and, more recently, the Receiver is long and tortured, the Receiver believes a recitation of it is necessary to demonstrate to the Court just how these cases have landed before it and why they should not remain here.  (The Receiver notes at the outset that he is a court-appointed neutral and takes no position as to the merits of the underlying partnership dispute between Mitte and World Class.)

---

[2]      The Receivership Order is attached as **Exhibit A**.

[3]      **Exhibit A at ¶ 39**.

## A. The Arbitration, Failed Settlement, and Arbitration Receivership

8. Mitte initiated litigation against the Partnerships and the General Partners (collectively "Defendants") in December 2018 in Case No. D-1-GN-18-007636 in Travis County District Court ("State Court Case") asserting that Defendants failed and refused to provide Mitte with partnership information to which it was entitled under the partnership agreements and Texas law. Defendants compelled the case to arbitration before the Honorable Suzanne Covington (Ret.), American Arbitration Association Case No. 01-19-0000-5347 (the "Arbitration").

9. During the Arbitration, Defendants agreed to settle with Mitte for $10.5 million but when it came time to perform, Defendants did not make the payment. There are currently various claims pending by and between Mitte and Defendants in the Arbitration.

10. On October 11, 2019, Judge Covington entered an Order Appointing Receiver (the "Arbitration Receivership Order") over the Partnerships. Since that time, Defendants have stopped at nothing to thwart the Receiver's performance of his duties[4]. These Bankruptcy Cases are just the next step in the Defendants' scorched-earth strategy.

---

[4] After Judge Covington's ruling at the end of the day on Friday, October 4, 2019 that Milligan was appointed as Receiver and minutes before a status hearing as to the form of order on Monday, October 7, 2019, counsel for Defendants (Dennis Roossien at Munsch Hardt) issued a letter to Judge Covington stating:

> Being unable to dissuade your Honor from this destructive course of action, and being faced with an astonishingly draconian and overreaching form of order as detailed below, Claimants have searched for a solution, and have ultimately elected to seek, and have obtained, a super majority consent to sell the properties at market value through the only means available in this compressed timeline, **sales to affiliates** willing to purchase the properties at their fair value. (Emphasis added)

Subsequently, on October 20, 2019, counsel for Defendants (Adam Gray at King & Spalding) issued another letter to Judge Covington opposing sanctions sought by Mitte stating:

> Respondent already knows that the properties were sold at market value because Claimants expressly stated as much in Mr. Roossien's October 7 letter. Respondent's feigned outrage that Claimants have not confirmed this a second time is simply grandstanding.

The parties later learned that both representations by counsel for Defendants were false and inaccurate. Defendants did not in fact sell or otherwise transfer the subject properties to affiliates, but rather used this diversionary tactic to frustrate and delay the entry of Judge Covington's order appointing Receiver.

**B.       The State Court Receivership**

11.      On October 14, 2019, in the State Court Case, Mitte filed an application for confirmation of the Arbitration Receivership Order, and two days later, the World Class Partners intervened in the State Court Case challenging the receivership.  The Honorable Jimmy Carroll in Travis County District Court confirmed the Arbitration Receivership Order on October 31, 2019.  Defendants immediately appealed and sought temporary relief from the Third Court of Appeals.

12.      Meanwhile, on November 4, 2019, in complete disregard of the Receivership Order,[5] the World Class Partners sued Milligan (both individually and as Receiver), his firm Harney Partners, and Mitte in Travis County Case No. D-1-GN-19-007755.  World Class asserted claims against the Receiver for conspiracy, alleging that Milligan as a "bagman receiver" "with rouge and nefarious intent" to "harass, embarrass, scare or worse" conspired with Mitte to "wrongfully secure control of [the Partnerships] and to loot them of their valuable assets."[6]  On November 6, 2019, the appellate court stayed Judge Carroll's confirmation of the Arbitration Receivership Order, and World Class immediately dismissed the petition in intervention and the lawsuit against Milligan and Mitte.

13.      Mitte then filed a new Motion to Appoint Receiver in the State Court Case, and the Honorable Jan Soifer held a full-day evidentiary hearing that culminated with entry of the Receivership Order on December 10, 2019, which was substantially identical to Arbitration Receivership Order.[7]  Defendants appealed the Receivership Order and again sought temporary relief from the Court of Appeals.

---

[5]     See **Exhibit A at ¶ 42.**

[6]     The Petition filed in Case No. D-1-GN-19-007755 is attached as **Exhibit B.**

[7]     While the District Courts of Travis County utilize a "central docket," after hearing several matters in the State Court Case, Judge Soifer assigned all matters involving Mitte, these Partnerships, and the Receivership to her court. She has conducted several very lengthy hearings since December 10, 2019.

14.     On December 19, 2019, the Court of Appeals entered an order partially abating and staying the Receivership Order.  Significantly, the appellate court did not stay the receivership itself, but merely required that the Partnerships notify the Court of any foreclosure postings and directed that the Receiver not file a bankruptcy for the Partnerships.[8]  The appellate court further directed the State Court to determine factual questions regarding a possible supersedeas.  On January 9, 2020, Judge Soifer entered an order holding that it was not appropriate that the Receivership Order be superseded, but, if the Court of Appeals determined that it should be superseded, the amount of the bond should be a minimum of $10,500,000.[9]

15.     Defendants again sought emergency relief from the Court of Appeals, and on February 3, 2020, the appellate court stayed the receivership pending the State Court's reconsideration of the proper amount of supersedeas.  After another full-day hearing, Judge Soifer ordered that the bond be set at $3,875,305 to be paid within 20 days (by April 7, 2020).[10]  After that deadline was extended to April 21, 2020 and Defendants' request for a further extension was denied, Defendants failed to post the supersedeas bond.[11]

16.     On April 21, 2020, the final day on which Defendants could post a supersedes bond, World Class formed two new Delaware limited liability companies and allegedly transferred the World Class Partners' interests in the Partnerships to these two entities.[12]  World Class, through

---

[8]     The bankruptcy issue had not been raised by any party.

[9]     Judge Soifer determined that a bond, if any, should be set at the amount of the previously breached settlement.

[10]     The court determined the amount of the bond based on testimony from Defendants' expert regarding the value of Mitte's minority limited partnership interest (after deeply discounting such valuation for "lack of control" and "lack of marketability"), rather than the value of the property or the prior settlement.

[11]     On May 29, 2020, the Court of Appeals entered an order clarifying that all stays affecting the receivership had been lifted, including the stay against filing bankruptcy.

[12]     The two new entities were 1st and Trinity Super Majority LLC and 3rd and Congress Super Majority LLC (the "Super Majority Entities").  The Assignments of the World Class Partners' interests to the Super Majority Entities are attached as **Exhibit C.**  Judge Soifer noted the common denominator with all World Class entities is Nate Paul:

the Super Majority Entities, yet again attempted to intervene in the State Court Case.  And, yet again, continuing to violate the Receivership Order, they filed suit against Milligan (both individually and as Receiver) in Travis County Case No. D-1-GN-20-003550.  This time, however, World Class brought claims not only against Mitte and Milligan, but also against Mitte's counsel Ray Chester of McGinnis Lockridge, and against Receiver's counsel, Steve Lemmon and Rhonda Mates.[13]

### C.    The Receiver's Actions and the Partnerships' Obstruction

17.    The Arbitration Receivership Order was in effect from October 11 to November 6, 2019, and the Receivership Order was in effect from December 10, 2019 to February 3, 2020 and April 21 to May 29, 2020 subject to the limitations on alienation of the property and bankruptcy set by the appellate court, and after May 29, 2020 with no limitations.[14]  Prior to the February 3 stay, the Receiver had already done some work, notably having obtained Partnership bank records from Wells Fargo, and having filed a fraudulent transfer action, a few days prior to the expiration of the statute of limitations, against World Class Capital Group based on approximately $2.5 million that had been transferred from the Trinity LP bank account over a period of less than two weeks.

---

I will note that I have now looked at the assignments … I note that Natin Paul has signed in every signature line on both assignments. He signs as Assignor, World Class Partner Holdings, LLC, by Natin Paul, President; Assignee, 1st and Trinity Super Majority, LLC, by Natin Paul, President; agreed to and accepted by the General Partner of the Partnership, WC 1st and Trinity GP, LLC, by Natin Paul, Manager. That's on the 1st and Trinity. On the other partnership, the 3rd and Congress partnership, he signed five places as Assignor, World Class Real Estate, LLC, as Class B Limited Partner, 49.5 percent and Class A limited partner .76 percent by Natin Paul, President; World Class Interest, LLC, as Class A Limited Partner, 35.82 percent, by Natin Paul, President; World Class Partner Holdings, LLC, as Class A Limited Partner, 5.08 percent, by Natin Paul, President; Assignee, 3rd and Congress Super Majority, LLC, by Natin Paul, President; and finally, agreed to and accepted by the General Partner of the partnership WC 3rd and Congress GP, LLC, by Natin Paul, Manager.

**Exhibit D, July 22 Hearing Tr. at 42-43.**  Judge Soifer then struck the Super Majority Entities' Petition in Intervention in the State Court Case.

[13]    A copy of the Petition in Case No. D-1-GN-20-003550 is attached as **Exhibit E.**

[14]    A timeline of the stages of the receivership and appeals is attached as **Exhibit F.**

18.    Since his appointment, the Receiver has sought turnover of the books and records and unrestricted access to the Partnerships' accounting data as required by the Receivership Order. These attempts have been met not only with reluctance, but with outright hostility.  During these periods, the Defendants ignored the Receiver's requests for documents and interfered with the Receiver's duties by telling third parties (including secured lenders) that they did not have to cooperate with the Receiver.[15]

19.    In the course the receivership, the Receiver has learned that the Partnerships have not been paying all their debts as they become due.  Notably, Defendants and their affiliates (now on their 11th law firm in this one matter) owe legal professionals well in excess of $500,000 and have incurred approximately $1.3 million in legal fees just since the inception of the Receivership.[16] Further, during the period the stay was in effect between February 3 and April 21 when Defendants were again in control of the Partnerships' bank accounts, they did not attempt to pay legitimate debts, such as the approximately $172,000 in past-due property taxes owed by Trinity LP, but instead paid their lawyers and expert appraiser more than $225,000 to continue their opposition to the orders entered in the State Court Case.

20.    After Defendants failed to supersede the Receivership Order on April 21, the Receiver vigorously attempted to effectuate an orderly transition of the Partnerships, but to no avail.  Judge Soifer entered an order on June 8 forbidding Defendants from contacting any third

---

[15]    Judge Soifer recognized this interference at the June 25 hearing:
> I am concerned that the defendants and its representatives have been telling people, including those who were in possession of the documents of the defendants, that the receivership order hasn't been in effect when it has.

**Exhibit G, June 25 Hearing Tr. at 142.**

[16] In fact, the Receiver discovered that the Munsch Hardt law firm has not been paid at all for its representation of Defendants in the Arbitration and State Court Case and has previously asserted a claim of approximately $73,000. Despite this, Debtors have not identified Munsch Hardt as a creditor in these Bankruptcy Cases.

parties regarding any aspect of the business of the Partnerships and compelling Defendants' to immediately turn over all documentation and assets as required by the Receivership Order.[17]

### D.    State Court's Admonishments and Discovery and Sanctions Ruling

21.    The Receiver subsequently filed a motion for contempt and sanctions, which was heard on June 25, 2020.  The morning of the hearing, Defendants produced approximately 3,700 pages of documents in (perhaps deliberately) disorganized pdf format and asserted that those constituted all the books and records of the Partnerships.   Judge Soifer was understandably dubious.[18]  She determined that Defendants' conduct prior to the hearing warranted sanctions:

> I'm not going to sign an order today. But I do find that sanctions are appropriate and that even if everything that was required over the past months was produced today, that that still entitles the Receiver to an award of sanctions.[19]

22.    Nonetheless, she gave Defendants one more chance to get it right:

> So here's what I'd like to do. I'm going to order the defendants to review the receivership orders … and to certify that everything required has been produced to Mr. Lemmon. . . .

> So I'm going to give you-all a week, so till next Thursday, Ms. Peña and Mr. Scarborough, to get the certification and any additional documents done. And then I am going to give Mr. Lemmon and Mr. Chester a week after that to tell me if they agree that they've gotten everything that is required to the best of their knowledge.[20]

---

[17]    A copy of the Supplemental Order Regarding Receivership and Compelling Compliance with Receivership Order is attached as **Exhibit H.**

[18]    But I'm not convinced that the documents satisfy the requirements of this court's receivership orders, which required not that they get PDFs of bank account records and ledgers, but that they get the actual ledgers that would allow them to see when entries were made and for what amount. And so I'm concerned that what was handed over today, in and of itself, doesn't comply with the receivership order.
**Exhibit G at 142**.

[19]    **Exhibit G at 146.**]

[20]    **Exhibit G at 144-146.**

23.     Not surprisingly, Defendants' sworn certification that all documents had been turned over (the "Certification") was far from accurate, and the Receiver filed a Report to that effect on July 9, 2020 ("Receiver's Report").[21]  The Receiver's Report showed the following:

- All books and records of the Partnerships had not been turned over.

- False entries had been made in the general ledgers of the Partnerships.

- The Texas Comptroller's Office had recently garnished the Partnerships' bank accounts (in a total amount of more than $260,000) to collect for amounts owed by other World Class entities, but no records showing why or how, or even referencing the levies were provided.

- There are partners and creditors of the partnerships for which documents had not been provided.

- Intercompany transactions among various World Class entities of approximately $37 million with almost no explanation or supporting documentation.

24.     On July 2, 2020, the Receiver, pursuant to his duties under the Receivership Order, filed a Preservation/Liquidation Plan in which he proposed to retain a real estate broker and begin the marketing process for the real property owned by Trinity LP.[22]

25.     On July 22, 2020, Judge Soifer conducted another lengthy hearing[23] at which she stated:

> And I have made some orders, and **I have already ruled in that June 25th hearing that the Motion for Sanctions was being granted because I believed that the prior court order hadn't been complied with.** And I'm -- I need to get back and figure out what the amount of the sanctions will

---

[21]     The Defendants' Certification is attached as **Exhibit I**, and the Receiver's Report is attached as **Exhibit J**.

[22]     The Receivership Order instructs Receiver to file such a plan.  See **Exhibit A at ¶¶ 47-48**.  The Receiver's Preservation/Liquidation Plan and Motion to Retain Real Estate Broker is attached as **Exhibit K .**  Receiver has not yet filed such a plan for Congress LP since the "triple net" lease on that property allows for that property's expenses to be paid, unlike Trinity LP.

[23]     There were multiple matters set for hearing on July 22, including, among others, Receiver's Liquidation/Preservation Plan and Motion to Retain Real Estate Broker, Receiver's Motion Set Claims Deadline, Defendants' Motion to Quash Deposition of Barbara Lee, Mitte's Motion to Strike Petition in Intervention of Super Majority Entities.  Attorney Eric Cassidy appeared on behalf of the Super Majority Entities seeking to intervene in the State Court Case, but Judge Soifer struck the Super Majority Entities' petition in intervention.

be. But let me just say this. To the extent that the Receiver is not cooperated with, I have serious concerns. And at hearing, there was -- the steps that were necessary to hold anybody in contempt were not followed. But let me just make it clear that I think if the parties are not complying with the requests of the Receiver for information, then depositions are appropriate. And if there's still information that is being kept from the Receiver that I think should have been provided, then I will entertain motions for contempt under appropriate procedural steps being taken.[24]

26.     The hearing on the Receiver's pending Preservation/Liquidation Plan for Trinity LP was continued until August 4 because Judge Soifer wanted the Receiver to present other options for the preservation and/or disposition of the receivership assets.[25]

27.     Receiver had previously noticed the deposition of Barbara Lee, the person who signed the Certification, and Defendants filed a motion to quash, which was also heard on July 22. Judge Soifer denied the motion to quash and ordered that the Lee deposition occur by July 31 or at a time agreed upon by the parties.  The parties agreed to schedule the Lee deposition for August 5 at 10:30 a.m.  But at the August 4 hearing, Defendants argued that the Lee deposition could not be video recorded because they had not received five days' notice.  Judge Soifer overruled that objection and instructed Defendants that Ms. Lee would be deposed by video on August 5.

28.     On August 4, 2020, Judge Soifer held an all-day hearing on Receiver's Preservation/Liquidation plan for Trinity LP.[26]  The Receiver offered lengthy testimony regarding sale and refinancing options for Trinity LP.  Defendants spent several hours attacking the Receiver and the Receivership Order rather than challenging the sales process.[27]

---

[24]     **Exhibit D at 59-60** (emphasis added)**.**

[25]     Upon the court's instructions during the July 22 hearing, the Receiver filed a supplemental plan indicating possible refinancing options.  The Supplemental Plan is attached as **Exhibit L.**

[26]     At the conclusion of the hearing, Judge Soifer indicated she desired further briefing regarding whether liquidation of the Partnership property was proper, given the statute under which Mitte sought appointment of the Receiver.

[27]     Defendants called as a witness none other than Eric Cassidy as the "corporate representative for the Super Majority on behalf of the partnerships."  Recall that Mr. Cassidy most-recently appeared as counsel for the Super Majority Entities seeking to intervene in the State Court Case. When asked by Receiver's counsel about his role with

29.  At the conclusion of the hearing, Judge Soifer opined on Defendants conduct and made it clear that things were about to change:

> THE COURT: … I spent the day yesterday reviewing all of the pleadings and the arguments and the information that I have available to me about the motion to compel, the Receivership Order, and the issue of sanctions. And I am persuaded that the Defendants have willfully chosen to disobey the Court's orders.
>
> …
>
> So I am inclined to grant sanctions. **But I don't think sanctions are enough**. **And my concern is that at every turn, the orders of Judge Covington and my orders have been disobeyed because the sanctions motion only came after an order that they were to comply.** And so I am persuaded that the Plaintiff and the Receiver need to be given access -- and I guess just -- we can start with the Receiver, must be given access to the [Yardi accounting software system]—
>
> …
>
> And I am persuaded that that is the information that you-all need. And it seems as though the reason you haven't gotten it, although this hasn't been argued directly, is because all of their accounting is intertwined among all these various entities, and once you get access to Yardi, you get to see everything. And if I'm correct about that, **then that is my order; that if you can't go into Yardi without seeing all of the World Class entities' financial information, then so be it, because that seems to be a deliberate choice.** If there is a way to go into Yardi without seeing anything

---

the Super Majority Entities, Mr. Cassidy stated:  "I don't hold any particular office.  I've been designated by the Super Majority as a corporate representative for the purposes of attempting to preserve the asset and refinance of the properties."  See **Exhibit M, Aug. 4 Hearing Tr. at 185.**  Understandably perplexed by this turn of events, Judge Soifer had questions of her own:

> THE COURT: Well, let me ask a few questions. Mr. Cassidy --… who is the Super Majority?
>
> THE WITNESS: The Super Majority, of course, is the Trinity and Congress partnership. Ultimately, when we trace it down through the Defendants, it will -- the ultimate entity and authority is Mr. Paul.
> …
> I mean, ultimately, the reason they've asked me to do it is to the extent that the Defendants or the Super Majority go into the marketplace and begin discussions with lenders, we thought it'd be better if it was done by somebody -- with me to be the face of the Super Majority with legal experience. And also, because of the kind of litigation, we thought it'd make it more comfortable if I was the face of this organization if this plan is actually adopted by the Court.
>
> THE COURT: So you're basically outside counsel.
>
> THE WITNESS:  I was originally retained as outside counsel, yes….

**Exhibit M at 187.** But once Judge Soifer pointed out that if Mr. Cassidy offered testimony as a corporate representative, it would waive the attorney-client privilege between him and his clients, Defendants' counsel promptly withdrew Mr. Cassidy as a witness. **Exhibit M at 201.**

beyond the entities that are Defendants in this lawsuit, then that -- that is my order.

But I am going to award sanctions, and I am going to award them against both the Defendants and Mr. Paul individually because it's very clear to me that awarding them against the Defendants gets me nowhere because they're insolvent or illiquid at -- at the very least.[28]

30.    The morning following that August 4 hearing, and just minutes before the deposition of World Class' Vice President of Accounting (Barbara Lee) started, the Defendants each filed a bankruptcy petition in this Court.  This was clearly just the latest and most desperate attempt to prevent the Receiver from discovering financial information regarding the Partnerships and to circumvent the entry of a written sanctions order that Judge Soifer had previously granted.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Partnerships Bankruptcy Cases should be dismissed for lack of authority to file.

31.    The Receivership Order vested the Receiver with "all powers, authorities, rights, and privileges necessary to manage the Receivership Assets" including "all powers to manage the Receivership Assets that were heretofore granted to the general partners under the Partnership Agreements."[29]  The Receivership Order vested in the Receiver "the sole and exclusive right to file voluntary petitions" under the Bankruptcy Code for the Partnerships.[30]

32.    The Receivership Order further stated that "[n]o person holding or claiming any position of any sort with any of the Partnerships shall possess any authority to sell, convey, manage, retain, or in any way exercise control over the Receivership Assets."[31]  As such, Nate Paul, who signed (although electronically) and caused the voluntary petitions to be filed in the

---

[28]    **Exhibit M at 228-230** (emphasis added).

[29]    **Exhibit A at ¶ 4.**

[30]    **Exhibit A at ¶ 39.**

[31]    **Exhibit A at ¶ 5.**

Partnerships' Bankruptcy Cases as the "authorized agent" of the Partnerships, was without authority to file such petitions for the Partnerships, and the Bankruptcy Cases should be dismissed.

33.     Appointment of a receiver vests authority to file a bankruptcy case with the receiver. *Chitex Comm. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994); *In re Statepark Bldg. Group, Ltd.*, 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004); *El Torero Licores v. Raile (In re El Torero Licores)*, 2013 WL 6834609 (C.D. Cal. Dec. 20, 2013).  In *Chitex*, for example, the court held that dismissal of a bankruptcy case filed on behalf of a corporation by the corporation's president after a receiver had been appointed was appropriate because the authority to file was vested in the receiver.  *Chitex*, 168 B.R. at 589-90.  "The president of an insolvent corporation had no authority to affect the corporation's property interests once a state court had placed it into receivership." *Id*. at 590.

34.     The Fifth Circuit has also held that a state court order appointing a receiver with authority to file bankruptcy vests authority to file with the receiver, so long as the defendant placed in receivership was subject to the jurisdiction of the state court.  *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., LLC)*, 690 Fed. Appx. 283, 286 (5th Cir. 2017).  The State Court clearly had jurisdiction over the Partnerships because they are Texas limited partnerships, headquartered in Austin, whose sole assets are located in Travis County.

35.     In this case, the sole authority to file a bankruptcy petition (and other corporate control) was vested with the Receiver.  The State Court's Receivership Order is valid, and pursuant to the Fifth Circuit's analysis in *Cleveland Imaging*, is not subject to collateral attack.  Accordingly, the Bankruptcy Cases of the Partnerships Court should be dismissed.

**B.      The Bankruptcy Cases should be dismissed because they were not filed in good faith.**

36.      A Chapter 11 bankruptcy petition must be filed in good faith.  *In re Humble Place Joint Venture*, 936 F.2d 814, 816-17 (5th Cir. 1991); *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1071–72 (5th Cir. 1986) (stating that every bankruptcy statute has incorporated "a standard of good faith for the commencement, prosecution, and condition of bankruptcy proceedings . . . [and] requirement of good faith prevents abuse of the bankruptcy process . . . ."); *In re Baerg Real Prop. Tr.*, 585 B.R. 373, 389 (Bankr. N.D. Tex. 2018) ("[I]t is well established that good faith is an implied prerequisite to filing under chapter 11."); *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 168 (Bankr. S.D. Tex. 1989) (stating that good faith is "an implied requirement which has been repeatedly emphasized by courts") (citations omitted).  "'Good faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose."  *Chitex*, 168 B.R. at 590, quoting *In the Matter of Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970).

37.      A court may dismiss a bankruptcy petition for cause under 11 U.S.C. § 1112 if it was filed in bad faith.  *Inv'rs Group, LLC v. Pottorff*, 518 B.R. 380, 382 (N.D. Tex. 2014).  Once the movant establishes a *prima facie* showing of bad faith, the burden shifts to the debtor to offer proof that the petition was filed in good faith.  *In re Davis*, 93 B.R. 501, 504 (Bankr. S.D. Tex. 1987) (citing *Matter of Century City, Inc.*, 8 B.R. 25, 30 (Bankr. D. N.J. 1980)); *see In re DCNC N. Carolina I, LLC*, 407 B.R. 651, 661 (Bankr. E.D. Pa. 2009) ("The debtor bears the burden of proving good faith.") (citing *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003) (*citing In re SGL Carbon Corp.*, 200 F.3d 154, 160 – 62 (3d Cir. 1999))).  In *Pottorff*, the debtor was embroiled in state-court litigation with two minority equity investors, and 13 days before trial and

just 19 hours before a court-ordered deposition and deadline for production of documents, the debtor filed its bankruptcy petition. *Id*. at 383. The court found that debtor's bankruptcy petition was filed in bad faith because its primary purpose was to gain a tactical advantage in pending litigation. *Id*. at 384.

38. "[I]t should be clear that a debtor may not counter allegations of bad faith solely with an attempt to relitigate the issues presented in its state court case." *Matter of Little Creek Dev. Co*., 779 F.2d 1068, 1074 (5th Cir. 1986); *see also, In re Silberkraus*, 253 B.R. 890, 905 – 06 (Bankr. C.D. Cal. 2000) ("[A number of cases hold] that it constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in nonbankruptcy forum—whether that nonbankruptcy forum is a state or a federal district court.") (citing *In re SGL Carbon*, 200 F.3d 154 (bad faith for debtor to file bankruptcy to seek to gain a tactical litigation advantage in pending antitrust litigation)); *In re Monsour Med. Ctr., Inc*., 154 B.R. 201, 209 (Bankr. W.D. Pa.1993) (bankruptcy case dismissed as having been filed in bad faith where filing of bankruptcy was blatant forum shopping intended to reverse setbacks suffered in another forum); *In re Melp, Ltd*., 143 B.R. 890, 893 (Bankr. E.D. Mo.1992) (noting that bankruptcy court "should not be used as an alternative approach to state court procedures to resolve intra-company management and ownership disputes" and that "bankruptcy courts should become involved in cases only if the bankruptcy court's services are needed to truly reorganize a debtor who is having financial problems"); *In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580 (9th Cir. BAP 1995) (bad faith for debtor to file bankruptcy one day prior to a hearing on a creditor's discovery motion); *In re Phoenix Piccadilly, Ltd*., 849 F.2d 1393 (11th Cir.1988) (bad faith for debtor to file bankruptcy the day before the state court was to hold a hearing on the appointment of a receiver); *In re Albany Partners Ltd*., 749 F.2d 670 (11th Cir.1984) (bad faith for debtor to file

bankruptcy to frustrate the legitimate enforcement efforts of the secured creditors when the bankruptcy was filed after the state court granted a writ of possession and appointed a receiver, and on the eve of foreclosure); *In re HBA East, Inc*., 87 B.R. at 259 – 60 ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.") (citations omitted); *In re Martin*, 51 B.R. 490, 495 (Bankr. M.D. Fla. 1985) (Petition is not filed in good faith where the debtor seeks "protection of the bankruptcy court for the sole purpose of frustrating a legitimate process of a non-bankruptcy forum.").

39.     In these Bankruptcy Cases, Debtors' bankruptcy petitions are classic examples of bad faith.  The Debtors filed their petitions within minutes of the court-ordered deposition they had fought to avoid, in the face of an imminent order sanctioning them for their obstructive behavior towards to the Receiver, and with the knowledge that the Court had ordered the Receiver behind-the-scenes access to their (and World Class' if necessary) accounting data.  These facts establish a *prima facie* showing of bad faith, and absent the Debtors' conclusive evidence to rebut a bad faith presumption, the Bankruptcy Cases should be dismissed.

40.     Furthermore, Debtors cannot legitimately argue that the Bankruptcy Cases were filed for the good-faith purpose of financially restructuring these single asset real estate entities – the Receiver's initial plan for liquidation of Trinity LP that Defendants vociferously opposed in the State Court Case was the same as the sale process proposed in the World Class bankruptcies before this Court.  The Receiver has also been instructed by Judge Soifer to explore refinancing options, which is something World Class has not proposed as a path forward in the other bankruptcy cases.  Simply, Debtors cannot show that bankruptcy is a good-faith alternative to the State Court Case.

**C.     Alternatively, the Court should determine that the Receiver may act as the governing body of the Debtor.**

41.     Should the Court, in its discretion, decline to dismiss the bankruptcy cases for the reasons set forth above, the Receiver requests that the Court recognize the state court's Receivership Order and allow the Receiver to remain in charge of the Partnerships.

42.     The Receivership Order provides that the Receiver "shall have all powers, authorities, rights, and privileges necessary to manage the Receivership Assets" including "all powers to manage the Receivership Assets that were heretofore granted to the general partners under the Partnership Agreements."[32]  The Receivership Order vested in the Receiver "the sole and exclusive right to file voluntary petitions" under the Bankruptcy Code for the Partnerships and expressly provided:

> If a Partnership is placed in bankruptcy proceedings, **the Receiver may become, and may be empowered to operate each of the Receivership Estate as, a debtor in possession**.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.[33]

43.     The Receiver, to the exclusion of all others, was charged with the management of the Partnerships, and it is the management of an entity that has the authority under federal and state law to file a petition under the Bankruptcy Code.  Moreover, the Receivership Order contemplated the possibility of a bankruptcy filing and expressly provided a mechanism under which the Receiver would maintain control as the debtor in possession.[34]

---

[32]   **Exhibit A at ¶ 4.**

[33]   **Exhibit A at ¶ 39** (emphasis added).

[34]   The Bankruptcy Code specifically contemplates this possibility.  For example, 11 U.S.C. § 543(b) provides that a "custodian shall (1) deliver to the trustee any property of the debtor held or transferred to such custodian . . . " 11 U.S.C. § 543(b). A custodian is defined as, among other things, a receiver. *See id.* § 101(11)(A). By empowering the bankruptcy court to excuse a receiver from the duty of turnover under § 543(b)(1), but not mandating it to do so, the Code expressly envisions the possibility of a receiver both retaining its legal commission post-bankruptcy, and continuing to exercise it. 11 U.S.C. § 543(d)(1).

44.     Thus, the Receiver's duties are more than to merely hold the assets comprising the receivership estate.  Rather, he is tasked with the management of the business affairs of the Partnerships.  Accordingly, the Receiver should be treated as the person or entity in control of the Partnerships' rather than the General Partners or Nate Paul who filed the bankruptcy petitions for the Partnerships.  This is a different situation than a receiver appointed only for certain purposes or specific property.  This Receiver has been and should continue to be vested with all managerial powers over the partnerships.

45.     Alternatively, the Receiver suggests that he be appointed as the Chapter 11 trustee for the Debtors.[35]

## V.     CONCLUSION

46.     The Receiver is the only person or entity with authority to file voluntary bankruptcy for the Partnerships.  Nate Paul, the person in control of World Class, purportedly signed the Partnerships' bankruptcy petitions as the "authorized agent."  However, the Receivership Order divested Nate Paul and all other persons and entities of such power.  Therefore, the Bankruptcy Cases of WC 1st & Trinity LP (Case No. 20-10885) and WC 3rd & Congress LP (Case No. 20-10887) should be dismissed because they were filed without the property authority to do so.

47.     In these Bankruptcy Cases, Debtors' bankruptcy petitions are a classic example of bad faith.  The Debtors filed the petitions within minutes of the court-ordered deposition it had fought to avoid, in the face of imminent entry of an order sanctioning it for its obstructive behavior towards to the Receiver, and with the knowledge that the Court had ordered it allow the Receiver behind-the-scenes access to its (and World Class' if necessary) accounting data.  These facts establish a *prima facie* showing of bad faith, and absent the Debtor's conclusive evidence to rebut

---

[35]    The Receiver recognizes the initial decision as to what individual should be trustee is the province of the U.S. Trustee's Office.

a bad faith presumption, the Bankruptcy Cases of WC 1st & Trinity GP LLC (Case No. 20-10886) and WC 3rd & Congress GP LLC (Case No. 20-10888), and to the extent not dismissed for lack of authority, WC 1st & Trinity LP (Case No. 20-10885) and WC 3rd & Congress LP (Case No. 20-10887) should be dismissed.

48.     Alternatively, the Receiver seeks a declaration from the Court that he is the person in charge of WC 1st & Trinity LP (Case No. 20-10885) and WC 3rd & Congress LP (Case No. 20-10887) and shall serve as the debtors-in-possession in those Bankruptcy Cases.

Dated: August 7, 2020                    Respectfully submitted,

                                         STREUSAND, LANDON, OZBURN
                                         & LEMMON LLP

                                         By:/s/ Stephen W. Lemmon
                                             Stephen W. Lemmon
                                             State Bar No. 12194500
                                             lemmon@slollp.com
                                             Rhonda Mates
                                             State Bar No. 24040491
                                             mates@slollp.com
                                             1801 S. MoPac Expressway, Suite 320
                                             Austin, Texas 78746
                                             (512) 236-9900; (512) 236-9904 (Fax)

                                         ATTORNEYS FOR RECEIVER GREGORY S.
                                         MILLIGAN

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and correct copy of the foregoing instrument has been served on this 7th day of August 2020 upon all parties requesting service via ECF notification, and/or via first class mail upon the following:

DEBTOR:
WC 1st and Trinity, LP
814 Lavaca St.
Austin, TX 78701

DEBTOR:
WC 3rd and Congress, LP
814 Lavaca St.
Austin, TX 78701

DEBTOR:
WC 1st and Trinity GP, LLC
814 Lavaca St.
Austin, TX 78701

DEBTOR:
WC 3rd and Congress GP, LLC
814 Lavaca St.
Austin, TX 78701

DEBTORS' ATTORNEY:
Mark H. Ralston
13155 Noel Road
Suite 700
Dallas, TX 75240
214-499-5544
Fax : 214-499-5501
Email: mralston@fjrpllc.com

Internal Revenue Service
Centralized Insolvency Office
P. O. Box 7346
Philadelphia, PA 19101-7346

The Roy F. & Joann Cole Mitte Foundation
1008 West Avenue
Austin, TX 78701

City of Austin
PO Box 2267
Austin, TX 78783-2267

Wittliff Cutter PLLC
1209 Nueces Street,
Austin, TX 78701

Travis County Tax Office
PO Box 149328,
Austin, TX 78714-9328

Ray C. Chester
Michael A. Shaunessy
MCGINNIS LOCHRIDGE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701

SAN MARCOS EATERY 1, LLC | NEWK'S
3821 Lorna Road, Suite 107
Hoover, AL 35244

King & Spalding LLP
500 West 2nd Street, Suite 1800
Austin, TX 78701

United Heritage Credit Union
PO Box 271
Fort Worth, TX 76101

Hance Scarborough, LLP
400 W. 15th Street, Suite 950
Austin, TX 78701

Julia Clark & Associates
1401 West Avenue, Suite B
Austin, TX 78701

Harney Partners
3800 N. Lamar Blvd., Suite 200
Austin, TX 78756

LAZ Parking Texas, LLC
Attn: Brett Loeffler, G.M.
106 East 6th Street, Suite 320
Austin, TX 78701

1st and Trinity Super Majority, LLC
814 Lavaca Street
Austin, TX 78701

Alexander Dubose & Jefferson LLP
515 Congress Avenue, Suite 2350
Austin, TX 78701-3562

Peter Morin
3512 Pace Bend Road South
Spicewood, TX 78669

Texas Commission Environmental Quality
PO Box 3089
Austin, TX 78711

Nalle Plastics Family Limited Partnership
1801 S. Mopac Expressway, Suite 320
Austin, TX 78746

CR IV Industrial, LP
1501 South MoPac Expressway
Austin, TX 78746

3rd and Congress Super Majority, LLC
814 Lavaca Street
Austin, TX 78701

Anil R. Venkatrao
4410 Island Cove
Austin, TX 78731

/s/ *Stephen W. Lemmon*
Stephen W. Lemmon

## APPENDIX 1

### DEFINITIONS

| | |
|---|---|
| "Arbitration Receivership Order" | October 11, 2019 Order Appointing Receiver for the Partnerships entered in the Arbitration |
| "Arbitration" | American Arbitration Association Case No. 01-19-0000-5347 |
| "Bankruptcy Cases" | The bankruptcy cases filed on August 5, 2020 by WC 1st and Trinity LP (Case No. 20-10885), WC 3rd & Congress LP (Case No. 20-10887), WC 1st & Trinity GP LLC (Case No. 20-10886), and WC 3rd & Congress GP LLC (Case No. 20-10888) |
| "Certification" | Defendants' Certification Regarding Compliance with Receivership Order filed July 2, 2020 in the State Court Case (Exhibit I) |
| "Congress GP" | Debtor WC 3rd & Congress GP LLC |
| "Congress LP" | Debtor WC 3rd & Congress LP |
| "Debtors" | The Partnerships and General Partners collectively |
| "Defendants" | The Partnerships and the General Partners, as defendants in the State Court Case |
| "General Partners" | Trinity GP and Congress GP collectively |
| "Milligan" or "Receiver" | The court-appointed Receiver for the Partnerships appointed in the State Court Case |
| "Mitte" | The Roy F. & Joann Cole Mitte Foundation |
| "Nate Paul" | Natin Paul |
| "Partnerships" | Debtor WC 1st & Trinity LP and Debtor WC 3rd & Congress LP |
| "Receiver's Report" | Receiver's Report Regarding Defendants' Compliance with Receivership Order filed July 9, 2020 in the State Court Case (Exhibit J) |
| "Receivership Order" | The Order Appointing Receiver for the Partnerships dated December 10, 2019 in the State Court Case (Exhibit A) |
| "State Court Case" | Case No. D-1-GN-18-007636 in Travis County District Court. |
| "Super Majority Entities" | 1st and Trinity Super Majority LLC and 3rd and Congress Super Majority LLC. |
| "Trinity GP" | Debtor WC 1st & Trinity GP LLC. |
| "Trinity LP" | Debtor WC 1st & Trinity LP. |
| "World Class Partners" | Collectively, the World Class-affiliated limited partners of the Partnerships |
| "World Class" | Nate Paul and the World Class Partners. |

## APPENDIX 2

### EXHIBITS

| Exhibit | Description |
|---|---|
| A | Receivership Order dated December 10, 2019 in the State Court Case |
| B | Original Petition, Case No. D-1-GN-19-007755, *World Class Real Estate LLC, et al vs. Gregory S. Milligan, et al*, in the 53rd Judicial District Court of Travis County, Texas |
| C | April 21, 2020 Assignments of Interests to Super Majority Entities |
| D | July 22, 2020 Hearing Transcript in State Court Case |
| E | First Amended Petition, D-1-GN-20-003550, *1st and Trinity Super Majority LLC, et al vs. Gregory S. Milligan, et al,* in the 250th Judicial Court of Travis County, Texas |
| F | Timeline of Status of Receivership |
| G | June 25, 2020 Hearing Transcript in State Court Case |
| H | Supplemental Order Regarding Receivership and Compelling Compliance with Receivership Order dated June 8, 2020 |
| I | Defendants' Certification Regarding Compliance with Receivership Order filed July 2, 2020 in the State Court Case |
| J | Receiver's Report Regarding Defendants' Compliance with Receivership Order filed July 9, 2020 in the State Court Case |
| K | Receiver's Preservation/Liquidation Plan and Motion to Retain Real Estate Broker |
| L | Receiver's Supplemental Preservation/Liquidation Plan and Request for Instructions |
| M | August 4, 2020 Hearing Transcript in the State Court Case |